UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

STEPHEN DESMUND PETERSON,
a/k/a STEVEN DESMOND PETERSON,

     Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

     Defendants.

Civil Action No. 6: 14-CV-134-KKC

**MEMORANDUM OPINION
AND ORDER**

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Stephen Desmund Peterson is a federal inmate presently confined at the United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky. Proceeding *pro se*, Peterson has filed a complaint, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80, and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against the United States of America, the United States Department of Justice, the Director of the Federal Bureau of Prisons ("BOP"),    and numerous prison personnel at the following five federal prisons: (1) United States Penitentiary-Victorville ("USP-Victorville") located in Adelanto, California, (2) the Federal Transfer Center in Oklahoma City, Oklahoma ("FTC-Oklahoma"), (3) the Federal Medical Center in Springfield, Missouri ("FMCP-Springfield"), (4) the United States Penitentiary in  Inez, Kentucky ("USP-Big Sandy"), and (5) USP-McCreary. Peterson claims that he is entitled to compensatory damages under the FTCA due to the negligence and/or medical malpractice associated with surgery to his right forearm on October 27, 2009.  Post-surgery, he further claims that various prison officials and employees have been deliberately    indifferent    to    his    serious    medical    needs    in    violation    of    his

constitutional rights under the Eighth Amendment to the U.S. Constitution.  [R. 1]  Peterson also appears to assert state law claims for negligence and/or medical malpractice against Dr. Louis Redix, an orthopedic surgeon in California who performed the surgery on his right forearm on October 27,  2009, and various other hospital staff at Barstow Community Hospital, a hospital located in Barstow, California.  Peterson seeks compensatory damages, as well as declaratory and injunctive relief.  By prior Order, the Court granted Peterson's motion to proceed *in forma pauperis*.  [R. 7]

The Court must conduct a preliminary review of Peterson's complaint because he is proceeding *in forma pauperis* and because he asserts claims against government officials.  28 U.S.C. §§ 1915(e)(2), 1915A.  A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).  The Court evaluates Peterson's complaint under a more lenient standard because he is not represented by an attorney.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003).  At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  The Court has given his complaint a liberal, and hence broad, construction, and will evaluate any cause of action which can reasonably be inferred from the allegations made.

For the reasons stated below, Peterson's *Bivens* claims against prison personnel at BOP institutions located outside of Kentucky will be severed and transferred, and Peterson's state law negligence/medical malpractice claims will be dismissed without prejudice.

## FACTUAL BACKGROUND

On or about October 27, 2009, during the time he was confined at USP-Victorville, Peterson underwent surgery at Barstow Community Hospital in Barstow, California, for repair of the malunion/nonunion of an ulna fracture of the right forearm.  This malunion/nonunion condition apparently resulted from the imperfect healing of a bone broken from a gunshot Peterson sustained in 1993.  [R. 1-3, Page ID# 215]  Dr. Louis Redix, an orthopedic surgeon, performed the surgery and described this procedure as "Repair of malunion of the ulna bone with bone graft."[1] [R. 1-2, Page ID# 46] Peterson states the received an "allograft" cadaver bone implant and that the source of that bone was from the hospital's bone bank.  Peterson claims that he had not consented to the receipt of a cadaver implant.  [R. 1, Page ID# 10] Following surgery, his arm was placed in a cast.  Peterson remained hospitalized for a couple of days and was returned to USP-Victorville on October 29, 2009.  [R. 1-2, Page ID #60]

Apparently, Peterson was released from the hospital with no surgical after-care instructions.  Ann Pierce, PA-C, in Health Services at USP-Victorville instructed him to keep the cast dry and his arm elevated.  *Id.*  Acetaminophen with codeine and ibuprofen were prescribed for pain relief.  *Id.*  On November 2, 2009, one week post-surgery, Peterson returned to Health Services complaining of pain and swelling not relieved by Motrin.  *Id.* at 63.  Acetaminophen with codeine was prescribed, and he was instructed to follow up as needed.  *Id.* at 64.  Peterson was seen at Health Services again on November 19, 2009, in his third week post-surgery, for a follow-up.  He had removed his cast against advice.  The examination showed mild swelling and tenderness, and a surgical wound with minimal sero-sanguinous discharge. *Id.* at 67.  Cephalexin was prescribed and the ibuprofen prescription was renewed.  Peterson was instructed to follow-

---

[1]Dr. Redix also repaired the malunion of proximal phalanx of Peterson's right index finger during this surgery.  *Id.* However, that surgical repair is not at issue in this case.

up at Sick Call as needed.  *Id.* at 68.  Peterson returned to Health Services on December 20, 2009, complaining of pain in his right forearm after doing pushups.  *Id.* at 71.  An ace wrap bandage was applied to area and an x-ray was ordered.  *Id.*

The following day, December 21, 2009, Peterson was transferred to USP-McCreary. During the transfer process, he was housed for a period of time at FTC-Oklahoma.  *Id.* at 126. While there, his right forearm was x-rayed.  The findings were: "Abnormal.  Suspected fracture/failure of malleable plate hardware which transfixes mid-ulna fracture at the level of the 3rd most distal screw.  Ballistic fragments, non-union of fracture fragments."  *Id.* at 75.  Peterson arrived at USP-McCreary on January 7, 2010.  *Id.* at 77.  On January 11, 2010, he was at Health Services and requested an appointment with his Primary Care Provider to discuss the x-rays of his right forearm and finger.  *Id.* at 82.  He was continued on current medications and restrictions until seen by the Primary Care Provider.  *Id.*

On March 26, 2010, Peterson went to Sick Call complaining of nausea/vomiting that had started the previous day.  He also reported having a headache.  *Id.* at 90.  A Loperamide capsule was prescribed, and a follow-up x-ray was scheduled for April 9, 2010.  *Id.* at 91.  He was instructed to follow-up at Sick Call and Chronic Care as needed.  *Id.*

On April 5, 2010, Peterson was examined at Health Services again.  An x-ray report of his forearm, previously lost, had been found and showed abnormal findings regarding his right forearm.  An orthopedic consultation for evaluation and possible surgical intervention was noted in Peterson's medical record.  *Id.* at 95.  On April 26, 2010, Peterson was advised that a request for an orthopedic consultation had been approved and was awaiting scheduling.  *Id.* at 97.  The results of Peterson's repeated x-ray were: "Abnormal.  - fractured fixation plate.  - nonunited mid ulner fracture with distraction and angulation."  *Id.* at 100.

4

Peterson's orthopedic consultation occurred on June 18, 2010, when he was examined by Ronald S. Dubin, M.D., at Kentucky Orthopedic Clinic.  This examination included x-rays being taken on that date.  Dr. Peterson's impression was: "Non union proximal ulna with broken plate." *Id.* at 113.  His recommendation was that "the plate should be removed and the proximal ulna should be bone grafted."  *Id.*  Also, due to the prior surgery, he recommended that a traumatologist perform this procedure.  *Id.*  His surgery was scheduled for November 30, 2010, but had to be rescheduled because Peterson was transferred to another institution on November 22, 2010.  *Id.* at 129.  He was returned to USP-McCreary on December 28, 2010.  *Id.*

On April 11, 2011, Dr. Patrice Beliveau, an orthopedic surgeon at Premier Orthopedics and Sports Medicine in London, Kentucky, performed a consultative examination of Peterson in preparation for a second surgery on his right forearm.  Her impression was "right ulna non-union with broken hardware."  *Id.* at 133.  On November 1, 2011, Peterson was admitted to St. Joseph Hospital in London, Kentucky, for the second surgery to his right forearm.  Dr. Patrice Beliveau performed this surgery.  *Id.* at 140-141.  Peterson remained hospitalized until December 6, 2011.  *Id.*  He was released with a follow-up treatment plan prescribed by Dr. Beliveau.  *Id.*

On December 6, 2011, Peterson was transferred to FMCP-Springfield for an orthopedic surgery consultation that was performed by Gregory P. Daus, M.D., a consulting orthopedic surgeon, on December 12, 2011.    *Id.* at 152-53.  Dr. Daus's Assessment and Plan are set out below:

ASSESSMENT:  Status post open reduction and internal fixation with bone grafting, right ulna fracture, complicated by methicillin-resistant Staphylococcus aureua (MRSA) and Enterococcus-positive cultures at surgery; currently on dapatomycin.

PLAN:  Patient is to finish out a total course of eight weeks of IV antibiotics. He is to follow-up with his orthopedic surgeon in Kentucky. Currently, I see no evidence of obvious infectious process; bond graft incorporation, however, has not occurred yet.  He is going to follow-

up with me on an as-needed basis.  He is going to be placed in an
ulnar gutter splint.

*Id.* at 152-53.

Subsequently, on May 24, 2012, Peterson was returned to USP-McCreary.  On September 12, 2012, Peterson went to Sick Call, complaining of pain in his right forearm.  *Id.* at 166. Naproxen was prescribed.  *Id.* at 167.  At that time, Peterson was also counseled about his forearm.  His medical record contains the following note: "Hardware in forearm is in correct position, but bone did not grow back together.  Do not play sports, do push-ups, pull-ups or apply significant weight/stress on right forearm.  Aware that no further orthopedic surgical interventions would be beneficial at this time, per MD." *Id.*

With the exception of Peterson's claim concerning the termination of his employment with UNICOR at USP-McCreary, and his claim regarding the loss or theft of some of his property at USP-McCreary, during the time he was away from USP-McCreary for a second surgery to his right forearm in November of 2011 and the subsequent post-surgery hospitalization/follow-up consultation and care for a period of time, Peterson's complaint concerns the surgical procedure performed on October 27, 2009, and the associated events that have unfolded/developed following that surgery.

Construing Peterson's complaint broadly, he has asserted (1) Eighth Amendment claims asserted against prison officials at five different federal prisons, (2) a tort claim against the United States of America under the FTCA, and (3) state law tort claims for negligence and/or medical malpractice relative to the surgery on his right forearm and associated follow-up treatment.  The Court shall begin its analysis by addressing Peterson's Eighth Amendment claims.

## DISCUSSION

To state a constitutional claim that is cognizable as a *Bivens* action under 28 U.S.C. § 1331, a plaintiff must plead and prove two essential elements.  He must show, first, the deprivation of right(s) secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law.  *Id.* at 397.  Peterson has properly alleged these two elements with regard all named defendants.

One issue raised in Peterson's factual allegations relates to the administrative remedies which he has pursued and exhausted within the BOP.  Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner seeking compensation from government employees through the courts must first exhaust whatever administrative remedies are available to the prisoner.  The attachments to Peterson's complaint reflect that he has filed at least two administrative remedies concerning the medical care he has received at USP-McCreary relative to his right forearm.[2] See Administrative Remedy Nos. 629060-F1 and 697537-F1, 697537-R1, and 697537-A1 to A4.  [R. 1-3, Page ID## 171-176; 179-189].  Administrative Remedy No. 697537 appears to be exhausted, but it is unclear whether Administrative Remedy No. 629060-F1 was exhausted.  [R. 1-2, Page ID# 129]

Thus, since Peterson has exhausted at least one administrative remedy concerning the medical care he received at USP-McCreary for his right forearm issue, the Court concludes that his *Bivens* claim should go forward at this juncture and that the named USP-McCreary and USP-Big Sandy defendants must respond to Peterson's Complaint.  Nevertheless, Peterson's claims against some of the federal employees named as *Bivens* defendants herein cannot go forward, as a matter of law, and will be dismissed for the reasons stated below.  Before proceeding further

---

[2]Peterson also filed Administrative Remedy No. 607096-F1; however, it concerned the termination of his employment with UNICOR and was unrelated to his medical care.

with the initial screening of this case, the Court turns to Peterson's claims against the prison officials and employees at the BOP institutions located outside of Kentucky.

### A.      Claims against the prison officials at USP-Victorville

The named USP-Victorville defendants are:  Hospital Administrator, name unknown, Victorville Medical Department; Dr. Jesus Fernandez, Medical Director; Jimmy Elevazo, health care provider; Ann Pierce, health care provider; and Gerald Cheney, health care provider.

Having now fully screened Peterson's Complaint and attached exhibits, the Court concludes that he has improperly joined the named USP-Victorville defendants to this action and that his *Bivens* claims against them should be severed and transferred to the Central District of California for further disposition.

Proper venue in civil rights claims is governed by the general venue statute, 28 U.S.C. § 1391.  Section 1391(e) provides a special venue provision for any action in which at least one of the defendants is an officer or employee of the United States or its agencies acting in his or her official capacity or under color of legal authority.  *See* 28 U.S.C. § 1391(e).  However, even where venue is proper, 28 U.S.C. § 1404(a) permits a district court to transfer a case to another district where it might have been brought when doing so would serve the convenience of the parties or the interests of justice.  "[A]s the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' makes a transfer appropriate."  *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir.) (Ryan, Gibbons, Sutton), *reh'g denied*, 583 F.3d 955 (6th Cir. 2009).

In determining what  would serve the convenience of the parties or the interests of justice, a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, "such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'"  *Moses v.*

*Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir.1991) (*citing Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)).

In this case, all of Peterson's constitutional claims against the USP-Victorville defendants arose in or near Adelanto, California, which is located in the judicial district of the United States District Court for the Central District of California. Potential witnesses presumably reside or could be located in that district and relevant documents, if any, are presumably located in the Central District of California. To the extent that Peterson asserts claims against the USP-Victorville defendants in their individual capacities, allowing this action to proceed in the Eastern District of Kentucky, based solely upon venue considerations set forth in 28 U.S.C. § 1391(e), becomes even less attractive. If this action remains in this district, the USP-Victorville defendants would most likely argue with good reason that any individual capacity claims against them should be dismissed for lack of *in personam* jurisdiction.

A defendant must have purposefully established minimum contacts within the forum State before personal jurisdiction will be found to be reasonable and fair. *International Shoe Co. v. Washington*, 326 U.S. 310, 316-19 (1945). In order to establish minimum contacts, a plaintiff must show that the defendant should reasonably anticipate being hauled into court in the forum State, because he purposefully availed himself of the privilege of conducting activities there. *Id.*; *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir. 1968). Put another way, "the relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459-50 (6th Cir. 1991) (citations omitted).

It appears that none of the California-domiciled, USP-Victorville defendants have such minimum contacts with the Commonwealth of Kentucky that exercising personal jurisdiction

over them would be constitutionally permissible.  None of the USP-Victorville defendants could have reasonably foreseen or anticipated that they could be hauled into a federal court in Kentucky based on their alleged actions in respect to the medical care they provided to Peterson in California.  To the extent that Peterson asserts individual capacity claims against the USP-Victorville defendants about events alleged to have occurred in California, the federal court in the Central District of California is in a much better position to assess those claims and determine whether any California state law is applicable thereto.  *See Abdur-Rahim v. Doe*, No. 7:08-CV-00224-ART, 2009 WL 678348 at *3, (E.D. Ky. March 11, 2009) (transferring venue of prisoner's civil rights claims, which accrued in New Jersey, to the federal court in that state under 28 U.S.C. § 1404(a), for the convenience of the parties and the interests of justice).

**C.      Claims against FTC-Oklahoma defendants**

The named FTC-Oklahoma defendants are:  unknown name Hospital Administrator, Medical Department; Dr. Tom Goforth, M.D.; PA, E. Barby, health care provider; Jonah Zwemer, reading radiologist; and Dr. Ernest, physician.

For the same reasons stated above concerning Peterson's claims against the USP-Victorville defendants, the Court concludes that he has improperly joined the named FTC-Oklahoma defendants to this action and that the claims against them should be severed and transferred to the Western District of Oklahoma for further disposition.

**D.      Claims against FMCP-Springfield defendants**

The named FMCP-Springfield defendants are:  Ryan Toliver, health care provider; Ernesto Gapasin, M.D.; Joseph Christ, orthopedic therapist; Jinna Su Chen, radiologist; and Gregory Daus, M.D., orthopedic specialist.

For the same reasons stated above concerning Peterson's claims against the USP-Victorville defendants, the Court concludes that he has improperly joined the named FMCP-

Springfield defendants to this action and that the claims against them should be severed and transferred to the Western District of Missouri for further disposition.

In regard to Peterson's claims against the named defendants at BOP institutions located outside of Kentucky, only the transfer of Peterson's *Bivens* claims against the USP-Victorville defendants, the FTC-Oklahoma defendants, and the FMCP-Springfield defendants to their respective judicial districts is warranted, not a transfer of the entire action which § 1404 authorizes. Under such circumstances, Federal Rule of Civil Procedure 21 permits severance of claims against parties who have been improperly joined.[3] "The manner in which a trial court handles misjoinder lies within that court's sound discretion." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988). "Rule 21 gives the court discretion to make three types of orders. The court may add parties, drop (dismiss) parties, and may sever '[a]ny claim against a party.'" 4-21 *Moore's Federal Practice-Civil* § 21.02 (internal quotation omitted). "Severance under Rule 21 results in separate actions." *Id*. at § 21.06. "As with any case in federal court, [the severed action] may be transferred under appropriate circumstances.... Indeed, the fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance." *Id.*

Accordingly, the Court will sever Peterson's claims against the defendants at USP-Victorville, FTC-Oklahoma, and FMCP-Springfield and will transfer those claims to the appropriate judicial district for further disposition.

---

[3]     Rule 21 provides:

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

Fed. R. Civ. P. 21.

**E.     Claims against non-BOP employees/prison officials**

Peterson also asserts claims against the following defendants in California who are not federal employees or prison officials:  Dr. Louis Redix, orthopedic surgeon; E. Fiervo, scrub nurse, Barstow Community Hospital, Barstow, California; name unknown, circulator, Barstow Community Hospital, Barstow, California; Dr. Shay, anesthesiologist, Barstow Community Hospital, Barstow, California; Greg Wierzbowski, M.D., radiologist, Mr. or Ms. Russell, supervising nurse, Barstow Community Hospital, Barstow, California; and unknown owners, CEOs, and administrators of Barstow Community Hospital, Barstow, California.

Peterson's claims against Dr. Louis Redix, as well as his claims against the other California defendants, appear to be state law negligence/medical malpractice claims.  These claims are addressed below:

1.  **Dr. Louis Redix -** Dr. Redix is the contract surgeon who performed the original surgery and bone graft on Peterson's right forearm at Barstow Community Hospital in Barstow, California.  Based on Peterson's allegation that Dr. Redix negligently performed this surgery, necessitating the need for additional, corrective surgery, his claim against Dr. Redix is best characterized as a state law negligence/medical malpractice claim.  The court declines to exercise supplemental jurisdiction over any state law claim that Peterson might have against Dr. Redix and will dismiss that construed negligence/medical malpractice claim without prejudice to Peterson's right to refile in state court.

Further, Peterson fails to provide any information providing a possible basis as to how a federal court sitting in the Eastern District of Kentucky would have any personal jurisdiction over Dr. Redix, a physician in California, with respect to Peterson's state law negligence/medical malpractice claim against him.  *See International Shoe Co. v. Washington*, 326 U.S. 310, 316-19 (1945); *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir. 1968).  *See also*

*Burger King Corp. v. Rudzewski*, 471 U.S. 462, 475-78 (1985).  For these reasons, Dr. Louis Redix will be dismissed from this action for lack of *in personam* jurisdiction over him.

2. **Remaining defendants in California**

The remaining California defendants are:  E. Fiervo, scrub nurse, Barstow Community Hospital, Barstow, California; name unknown, circulator, Barstow Community Hospital, Barstow, California; Dr. Shay, anesthesiologist, Barstow Community Hospital, Barstow, California; Greg Wierzbowski, M.D., radiologist; Mr. or Ms. Russell, supervising nurse, Barstow Community Hospital, Barstow, California; and unknown owners, CEOs, and administrators of Barstow Community Hospital, Barstow, California.

Peterson fails to provide any information to that would establish a possible basis as to how a federal court sitting in the Eastern District of Kentucky would have any personal jurisdiction over Barstow Community Hospital or any of its employees and/or owners with respect to any negligence/medical malpractice claim he might have against it or them.  *See International Shoe Co. v. Washington*, *supra; Southern Machine Co. v. Mohasco Indus.*, *supra. See also Burger King Corp. v. Rudzewski*, *supra.*

For these reasons, these remaining California defendants will be dismissed from this action for lack of *in personam* jurisdiction over them.

3. **Patrice Beliveau, M.D.**

Patrice Beliveau is an orthopedic surgeon in London, Kentucky, who performed the second surgery to Peterson's right forearm in November of 2011.  It appears that Peterson's claim against her is best characterized as a state law negligence/medical malpractice claim.  The court declines to exercise supplemental jurisdiction over any state law claim that Peterson might have against Dr. Beliveau and will dismiss that construed negligence/medical malpractice claim without prejudice to Peterson's right to refile in state court.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

1.    Pursuant to Fed. R. Civ. P. 21, Peterson's constitutional claims against the USP-Victorville defendants (Hospital Administrator, name unknown, Victorville Medical Department; Dr. Jesus Fernandez, Medical Director; Jimmy Elevazo, health care provider; Ann Pierce, health care provider; and Gerald Cheney, health care provider) set forth in Peterson's Complaint [R. 1] are **SEVERED** from this action and are **TRANSFERRED** to the United States District Court for the Central District of California for all further disposition.

2.    Pursuant to Fed. R. Civ. P. 21, Peterson's constitutional claims against the FTC-Oklahoma defendants (unknown name Hospital Administrator, Medical Department; Dr. Tom Goforth, M.D.; PA, E. Barby, health care provider; Jonah Zwemer, reading radiologist; and Dr. Ernest, physician) set forth in Peterson's Complaint [R. 1] are **SEVERED** from this action and are **TRANSFERRED** to the United States District Court for the Western District of Oklahoma for all further disposition.

3.    Pursuant to Fed. R. Civ. P. 21, Peterson's constitutional claims against the FMCP-Springfield defendants (Ryan Toliver, health care provider; Ernesto Gapasin, M.D.; Joseph Christ, orthopedic therapist; Jinna Su Chen, radiologist; and Gregory Daus, M.D., orthopedic specialist) set forth in Peterson's Complaint [R. 1] are **SEVERED** from this action and are **TRANSFERRED** to the United States District Court for the Western District of Missouri for all further disposition.

4.    The court **DECLINES** to exercise supplemental jurisdiction over Peterson's state law negligence/medical malpractice claims against the following non-BOP personnel in California: Dr. Louis Redix, orthopedic surgeon; E. Fiervo, scrub nurse, Barstow Community Hospital, Barstow, California; name unknown, circulator, Barstow Community Hospital, Barstow,

California; Dr. Shay, anesthesiologist, Barstow Community Hospital, Barstow, California; Greg Wierzbowski, M.D., radiologist, Mr. or Ms. Russell, supervising nurse, Barstow Community Hospital, Barstow, California; and unknown owners, CEOs, and administrators of Barstow Community Hospital, Barstow, California.  Peterson's state law negligence/medical malpractice claims against these named defendants are **DISMISSED WITHOUT PREJUDICE** to his right to refile in state court in California.

5.    The court **DECLINES** to exercise supplemental jurisdiction over Peterson's state law negligence/medical malpractice claims against defendant Patrice Beliveau, M.D., an orthopedic surgeon in London, Kentucky.  Peterson's state law negligence/medical malpractice claims against Patrice Beliveau, M.D., are **DISMISSED WITHOUT PREJUDICE** to his right to refile in state court in Kentucky.

6.    This matter stands submitted for completion of the initial screening.

Dated January 22, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY